The United States Of America District Court
Western District Of Michigan
Southern Division

FILED - GR
November 4, 2024 1:24 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: KS /11/5

Preston Carter
Plaintiff

Complaintant's Complaint
Jury Trial Requested

V

1:24-cv-1167
Robert J. Jonker
U.S. District Judge

The State Of Michigan
and The City of
Grand Rapids, Michigan
Defendants

Now comes Preston Carter, ~~Defendant~~ Plaintiff in this civil law suite under 42 USC 1983, alleging arbitrary, callous, malicious and deliberate indifference in the violations of his Federal and State Constitutional Rights. Including and not limited to the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, sec. 11 of the Michigan Constitution. Plaintiff alleges that both Defendants violated his right to be free from illegal "Search and Seizure."

1) On or about Nov. 4, 2021 Plaintiff purchased a Chevy Blazer from a used car lot. That very night the Plaintiff drove his vehicle and was pulled over by Defendants Grand Rapids police. For some inconceivable reason the officer said, "I could not see your sticker at first but I see it now. Do you have a license?" Plaintiff replied, "No."

2) Defendant Officer Joshua Rodenbeck ordered Plaintiff to turn the vehicle off and step out where he was immediately, handcuffed, pockets and vehicle "searched and seized". Plaintiff under mental anguish and emotional distress was imprisoned and charged with possession of controled substanc

and put his hands behind his back, handcuffed, and his pockets and vehicle were "searched and seized" and Plaintiff imprisoned. During which time Plaintiff is suffering great mental anguish and emotional distress. Plaintiff feels that if the officer didn't know he should have known he was violating Plaintiff's rights.

3) Plaintiff was found guilty of possession of controlled substance and sentenced to nine months and served five. Defendant State of Michigan had no right to imprison me for any length of time and no right to find me guilty of "inadmissable evidence." Both Defendants with "Deliberate Indifference," arbitrarily, callously, capriciously and maliciously violate Plaintiff's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Sec. 11 of the Michigan Constitution.

Plaintiff moves this court for summary judgement in favor of Plaintiff and award Plaintiff compensatory and punitive damages as the court deems just. For if Defendants didn't know, they should've known my rights.

RESPECTFULLY SUBMITTED

Preston Carter     11/1/24

## Statement of Facts

Preston Carter, an African American man, was stopped by the Grand Rapids Police Department ("GRPD") on November 4, 2021. T, 5.[1] Mr. Carter was driving a Chevy Trailblazer that had a temporary license plate facing outward in the back window. T, 5-7.

GRPD's interaction with Mr. Carter is captured on body camera and dash camera footage.[2] GRPD Officer Joshua Rodenbeck, who was in training at the time, conducted the stop. T, 5.

Between Rodenbeck initiating the stop and exiting his police car, light from the police car illuminated the temporary plate in the back windshield of Mr. Carter's vehicle. Appendix A at 1:31:56; Appendix B at T05:31:51Z.[3] Rodenbeck admitted that he saw Mr. Carter's temporary plate after initiating the traffic stop but before making contact with Mr. Carter. PE, 11; EH, 16; T, 11.

Rodenbeck testified that the vehicle's temporary plate appeared to be valid. PE, 12. After observing the plate, Rodenbeck continued with the traffic stop. T, 11-12.

---

[1] The transcripts are referenced as follows, followed by the page number: PE (Preliminary Examination); EH (Evidentiary Hearing); T (Trial); ST (Sentencing).

[2] The videos are filed under separate cover as Appendix A (body camera footage) and Appendix B (dash camera footage). At the hearing on Mr. Carter's motion to suppress, the trial court reviewed the body camera and dash camera footage. Trial counsel played the first minute and thirty seconds of the dash camera footage and the first two minutes and thirty seconds of the body camera footage. EH, 12-13. On appeal, the parties have stipulated that these portions of the dash and body camera video are part of the record for this Court in reviewing the trial court's ruling on the motion to suppress. See Stipulation Regarding Video Evidence (COA Docket Entry 13). Audio for each video is available after the first 30 seconds.

[3] The timestamps refer to the time on the running clock that appears in the upper right corner of the video frame in each video.

RECEIVED by MCOA 10/26/2023 9:41:16 PM



Above is a still photograph from Rodenbeck's dash camera footage, Appendix B, showing Rodenbeck's view before exiting his police cruiser. The photograph shows Mr. Carter's vehicle with a temporary license plate displayed in the back window. The police car's spotlight illuminates the temporary plate.

Officer Rodenbeck told Mr. Carter the reason for the stop was because Rodenbeck thought the vehicle had no license plate. EH, 15; Appendix A at 1:32:11-1:32:23. Later, in court, Rodenbeck added another reason for stopping Mr. Carter: he said the vehicle had a loud muffler. PE, 5.

At an evidentiary hearing where Mr. Carter's trial counsel challenged the constitutionality of the traffic stop, counsel pointed out that loud muffler sounds cannot be heard on the dash or body camera video. EH, 13. Officer Rodenbeck claimed, "[W]e won't be able to hear [a

RECEIVED by MCOA 10/26/2023 9:41:16 PM

loud muffler] in this video because there's a delay in the sound." EH, 17. Rodenbeck testified that the video does not capture when he first heard the loud noise, while sitting behind the Checkers restaurant. EH, 17. Rodenbeck admitted that the dash camera captured the sound of his own police car engine revving. EH, 19.

The dash camera video shows that, as the police followed Mr. Carter's vehicle, a silver four-door vehicle passed the police car, driving in the opposite direction. Appendix B at T05:30:58Z-T05:31:45Z. As the silver vehicle passed, its engine made a sound that can be heard on the dash camera video. Appendix B at T05:31:21Z-T05:31:30Z. But no sound can be heard coming from Mr. Carter's vehicle. Appendix B at T05:31:27Z-T05:31:45Z.

Officer Rodenbeck's body camera footage shows him standing next to Mr. Carter's vehicle and telling Mr. Carter to turn his engine off. Appendix A at 01:32:07-01:32:33. There is no loud noise coming from Mr. Carter's vehicle while the engine is on. *Id.*

After initiating the traffic stop, Officer Rodenbeck observed the temporary license plate, then approached Mr. Carter. T, 11. Rodenbeck asked for Mr. Carter's driver's license, but Mr. Carter did not have his license with him. T, 12. Rodenbeck immediately arrested Mr. Carter for no operator's license on person. T, 12.

Within 30 seconds of Rodenbeck's initial words to Mr. Carter, he ordered Mr. Carter to exit the car with his hands on his head. Rodenbeck then placed Mr. Carter in handcuffs. Appendix A at 1:32:07-1:33:10.

Officer Rodenbeck acknowledged that, when a subject does not have their driver's license, GRPD's policy is, "If you are unable to confirm the identity, then you may lodge a person[.]" T 1, 14. Rodenbeck admitted that he did not make any effort to confirm Mr. Carter's identity prior to ordering him to exit his vehicle and then taking him into custody. T, 12. The body and dash camera footage demonstrate no such effort.

Rodenbeck arrested Mr. Carter for no operator's license on person rather than issuing him an appearance ticket because Rodenbeck did

RECEIVED by MCOA 10/26/2023 9:41:16 PM

not want to be "standing out on the road" and he "prefer[red] to get [Mr. Carter] out of the car at that point." T, 13.

Before placing Mr. Carter in the police car, Rodenbeck conducted a search incident to arrest and found a small baggie containing a white substance in Mr. Carter's pocket. T, 8. The Michigan State Police Laboratory later determined the substance was 0.69 grams of cocaine. T, 17. Mr. Carter was ultimately charged with possession of less than 25 grams of cocaine. T, 21. Mr. Carter was never charged with or ticketed for no operator's license on person, failure to display a registration plate, or a loud muffler.

After a bench trial, the trial court found Mr. Carter guilty of possession of less than 25 grams of cocaine. T, 21.

The trial court sentenced Mr. Carter to serve nine months in the Kent County Jail. ST, 8. The court also ordered Mr. Carter to pay a $68 state minimum cost, a $130 crime victim's rights assessment, and $1,000 in court costs. ST, 8-9.

RECEIVED by MCOA 10/26/2023 9:41:16 PM

CPU

U.S. POSTAGE IMI
$2.31
FCMF   RDC 99
Orig: 49508
Dest: 49503
11/02/24
2000051483

f the Clerk

strict of Michigan
g, 110 Michigan St.

ids Mich
49503

PRESTON CARTER
452 STORRS SE
GRAND RAPIDS, MI.
49507

OFFICE O

Western Di
Federal Bld
NW # 399,
Grand Rap